IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| ELITE LOGISTICS SERVICES, INC., ET AL. | § § § | |
| VS. | § § | CIVIL ACTION NO. G-02-866 |
| ATX TECHNOLOGIES, INC., ET AL. | § | |

## REPORT AND RECOMMENDATION

Elite Logistics Services, Inc., Elite Logistics, Inc., and Harold Pace, II, (hereinafter "Elite") brought suit against ATX Technologies, Inc. and Bobby Ford, Inc. alleging infringement of Elite's Patent 5,712,899 (the '899 Patent). The Defendants have each moved for summary judgment. The Court, having carefully reviewed the motions, Elite's combined response, the Defendants' replies and the voluminous exhibits submitted by the parties now issues this Report and Recommendation to the District Court.

The Invention

The '899 Patent is titled "Mobile Location Reporting Apparatus and Methods." The patented invention is what is commonly known as an automobile GPS navigational system. The invention allows the operator of a motor vehicle to place a call from an enabled GPS cell phone to a base station from which the operator can receive verbal and visual information regarding the caller's geographic location. The invention uses global positioning satellite transmissions to track the location of the caller. The accused devices all use the same satellite transmissions to provide geographic location information from a base unit to motor vehicle operators by way of a cell phone. At issue are claims 8 and 9 of the Patent. The Court will address them *seriatum*.

Claim 8

The apparatus taught by Claim 8 has two basic components: (1) a mobile communications unit (mobile unit) which is, in effect, a wireless cellular phone and (2) a base communications unit (base unit) which receives calls from the mobile unit and communicates with the mobile unit operator. When the apparatus is in use, the mobile unit is capable of receiving raw GPS satellite signals, processing those signals and, during a phone call, transmitting them to the base unit. The base unit is capable of receiving the phone call and the GPS signals, decoding the signals into latitude and longitude through the application of an appropriate algorithm, and transmitting to the caller a physically displayed map of his location while maintaining voice contact with the caller to offer additional information or assistance.

Following a Markman Hearing, this Court defined certain relevant terms appearing in the '899 Patent. In accordance with those established definitions, the Patent is limited to an apparatus which decodes, *at the base unit*, the GPS signal received from the mobile unit. Both ATX and Bobby Ford seek summary judgment as to Claim 8. They argue that the accused devices all decode the GPS signal at the mobile unit, not at the base unit, and, therefore, cannot infringe.

At the center of this dispute is the meaning of "decoding." All of the devices involve the receipt of a GPS signal expressed in milliarcseconds at a base unit. The parties concede that milliarcseconds are nothing more than an alternative, more computer friendly way to express latitude and longitude. Hence, the Defendants argue that the simple conversion of milliarcseconds into degrees, minutes and seconds of latitude and longitude at the base unit computer for use in the visual maps transmitted to the mobile unit operator is not decoding; they

claim that to argue to the contrary is "nonsense." Unfortunately, for the Defendants, Elite's well-credentialed expert witness, Richard C. Levine, disagrees. In his affidavit (Plaintiff's Exhibit No. 12) Levine expresses his opinion that the ATX base unit conversion of milliarcseconds into degrees-minutes-seconds of latitude and longitude is accomplished by the application of an appropriate algorithm and is, therefore, a decoding of the GPS signal. Of course, the Defendants' expert witness disagrees, but the Court is convinced that this debate creates a genuine issue of material fact for the jury to determine.

ATX argues that if the Court finds against the Defendants on the "decoding" issue its liability for infringement, if any, would be limited to the "On Guard Tracker" system which it made and sold from 1995 to November 1999. As to the other six accused devices, ATX claims that it does not "use" Elite's apparatus because it only operates a base unit which serves the users of its subscribers' mobile units. For the reasons state below, this Court disagrees.

Claim 8 of the '899 Patent covers a combination of a mobile unit and a base unit; it is a "combination claim" which protects the manufacture of a base unit of the type here in suit. Cf. Entec Plastics Engineering Corp. v. The Gates Rubber Co., 206 U.S.P.Q. 524, 532, 1980 WL 30231 (D. Colo.) The only use that the base unit has is in combination with an enabled mobile unit; it, therefore, has no conceivable non-infringing use. By operating its base unit, ATX permits its subscribers to "use" the invention in violation of § 271(a): each call is a direct infringement. Since infringement is essentially a tort, Carbice Corp. v. American Patents Development Corp., 283 U.S. 27, 33 (1931), it seems ATX's participation in the calls makes it a joint or concurrent tort feasor. Regardless, ATX may be liable for inducing its subscribers to infringe. "Infringement in the inducement" is defined as the act of actively and knowingly

aiding or abetting direct infringement by another person.  Black's Law Dictionary, Eighth Edition 2004    This is precisely what ATX does through the operation of its base unit in combination with the mobile units of its subscribers.  See Entec, 206 U.S.P.Q. at 532, citing Rohm and Haas Co. v. Dawson Chemical Co., 599 F.2d 685 (5th Cir. 1979)

The Court agrees with ATX's argument that it cannot, except as to the 'On Guard Tracker" system, be liable as a contributory infringer.  Under the law as codified in § 271(c) in 1952, contributory infringement involves the offer to sell or the sale of a component of a patented apparatus; all other conduct which may have previously constituted contributory infringement under the existing state of law when subsections (b) and (c) were enacted now falls under subsection (b).  See Electronized Chemicals Corp. v. Rad-Mat, Inc., 288 F.Supp. 781, 784 (D. Md. 1968)    Since ATX has not offered to sell or sold any component parts of Elite's apparatus since it ceased to sell the "On Guard Tracker" it may not be liable as a contributory infringer as to the other accused devices.

Bobby Ford, however, has sold automobiles equipped with mobile units and, therefore, appears to be exposed to potential liability as a contributory infringer.

Claim 9

The apparatus taught by Claim 9 is basically the same GPS navigational system of Claim 8.  However, there are two significant differences.  The Claim 9 method includes a mobile unit with the ability to somehow "combine" a portion of the raw GPS signals it receives with an audio signal it produces before it transmits the combined signal to the base unit.  The capability of this "combined" signal permits "simultaneous" voice and data transmissions between the mobile unit and the base unit.  The combinations of the signals is the key to this method because, according

to Plaintiff's expert Levine, without it "the inherent characteristics of the global positioning signal and the voice (sic) do not permit them to be simultaneously transmitted." (Plaintiff's Exhibit No. 6, p. 17(m))   In fact, Claim 9 was rejected during prosecution until amended to include this element of simultaneity.

None of the accused devices permits simultaneous communication.  In each, the audio signal is deactivated during data transmission.  This "blank-and-burst" transmission protocol is, therefore, sequential in nature.  Elite concedes that the accused devices utilize sequential transmissions, but argues that the definition of "simultaneously" is broad enough to include this transmission protocol.  The Court disagrees.  This Court defined "simultaneously" as "at the same time." (Instrument no. 44)  Therefore, a subsequential transmission is, by definition, not a simultaneous one.   Elite, through Levine, attempts to expand the definition of "simultaneously" to include the concept of "perceptual" simultaneity, but this Court rejected this argument when it defined this disputed term after the <u>Markman</u> Hearing.  Because none of the accused devices utilize simultaneous audio and data transmissions they cannot infringement Claim 9.

For the foregoing reasons, the Court **RECOMMENDS** that the Motion for Summary Judgment (Instrument no. 79) of ATX be **GRANTED** insofar as it seeks dismissal of Elite's claim of contributory infringement of Claim 8 and any infringement of Claim 9.

It is further **RECOMMENDED** that the Motion for Summary Judgment (Instrument no. 79) of ATX be **DENIED** insofar as it seeks dismissal of Elite's claim of infringement and/or induced infringement of Claim 8.

It is further **RECOMMENDED** that the Motion for Summary Judgment (Instrument no. 76) of Bobby Ford be **DENIED**.

The United States District Clerk **SHALL** serve a copy of this Report and Recommendation on each counsel of record who **SHALL** have until **November 18, 2005**, to file written objections with the District Court in the **Galveston Division** of the Southern District of Texas. Failure to file written objections to the proposed findings, conclusions and recommendations contained in this report within the allowed time **SHALL** bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court, except upon grounds of plain error or manifest injustice.

**DONE** at Galveston, Texas, this _____1st_____ day of November, 2005.

John R. Froeschner
United States Magistrate Judge